UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARCI HUGHES,

      Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

No.  2:25-cv-0660 AC

**ORDER**

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1]  For the reasons that follow, plaintiff's motion for summary judgment will be DENIED, and defendant's cross-motion for summary judgment will be GRANTED.

I.  PROCEDURAL BACKGROUND

Plaintiff was initially awarded Title II disability insurance benefits after a hearing on April 9, 2020, with a fully favorable decision dated April 20, 2020.  Administrative Record

---

[1]  DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); <u>Bowen v. City of New York</u>, 476 U.S. 467, 470 (1986).

1

("AR") 157.[2]  The Administration conducted a Continuing Disability Review and found after a hearing that plaintiff's disability ceased as of May 5, 2022.  AR 193.  Plaintiff requested reconsideration of this decision.  AR 174.  Plaintiff testified before Administrative Law Judge Vincent A. Misenti on October 2, 2023.  AR 51-70 (transcript).  A supplemental hearing was held on April 4, 2024, to obtain additional testimony from a vocational expert because of a technical error in the recording.  AR 41-50 (transcript).  The ALJ issued an unfavorable decision on June 24, 2024.  AR 14-29.  Plaintiff requested review of the ALJ's decision by the Appeals Council, which was denied on January 29, 2025, making the ALJ's decision the final decision of the Commissioner of Social Security.  AR 1-5.

Plaintiff filed this action on February 24, 2025.  ECF No. 1; see 42 U.S.C. § 405(g).  The parties consented to the jurisdiction of the magistrate judge.  ECF No. 6.  The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner (ECF No. 7), have been fully briefed.  ECF Nos.  8 (plaintiff's summary judgment motion), 10 (Commissioner's summary judgment motion).

## II. FACTUAL BACKGROUND

On May 1, 2022, the claimant was a younger individual age 18-49, and in March of 2024, she changed age categories to an individual closely approaching advanced age.  AR 28, 20 CFR 404.1563.  Plaintiff has at least a high school education.  AR 56.  Plaintiff has work history from June of 2010 through February of 2014 as Respiratory Care Practitioner.  AR 114.

Plaintiff was found disabled by a decision dated April 20, 2020, with a disability onset date of February 24, 2016, due to injury to her neck causing chronic pain as well as chronic migraines.  AR 17.  A spinal cord stimulator was implanted in 2022 and subsequently replaced in March 2023.  AR 865-66, 1960, 2081-84.  In 2023, plaintiff was referred for diagnostic cervical injections and additional imaging.  AR 2808.  In September 2023, she was admitted for a 5-day course of intravenous dihydroergotamine infusions for active migraine headaches.  AR 2225-31.  In 2022, state-agency reviewing physicians A. Nasrabadi, M.D. and Y. Ruo, M.D. found that the plaintiff could perform a range of light work.  AR 111-14 (Ruo opinion, dated May 3, 2022),

---

[2]  The AR is electronically filed at ECF No. 7.

1851-59 (Nasrabadi opinion dated November 4, 2022). Based on the intervening medical record, the ALJ concluded that plaintiff's disability ended on May 1, 2022. AR 29.

### III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on

3

evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

### IV. RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI). Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). Social security claimants have the initial burden of proving disability. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).

"Once a claimant has been found to be disabled, however, a presumption of continuing disability arises in her favor." Bellamy v. Secretary of Health and Human Services, 755 F.2d 1380, 1381 (9th Cir.1985) (citing Murray v. Heckler, 722 F.2d 499, 500 (9th Cir.1983)). Balancing this presumption of continued disability, however, are provisions of the Act and its implementing regulations that are designed "to encourage individuals who have previously suffered from a disability to return to substantial gainful employment when their medical condition improves sufficiently to allow them to do so." Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1458 (9th Cir.1995). Accordingly, a claimant who has been awarded disability benefits is required to undergo periodic disability reviews, "to determine whether a period of disability has ended." Flaten, 44 F.3d at 1460; Schweiker v. Chilicky, 487 U.S. 412, 415 (1988) (most disability determinations must be reviewed at least once every three years); see 42 U.S.C. § 421(i)(1) (cases must be reviewed for continuing eligibility "at least once every three years"); 20 C.F.R. § 404.1594 (rule governing termination of benefits).

To determine whether a claimant continues to be disabled for purposes of receiving DIB

4

benefits, the Commissioner engages in an eight-step sequential evaluation process:

(1) Are you engaging in substantial gainful activity? If you are (and any applicable trial work period has been completed), we will find disability to have ended (see paragraph (d)(5) of this section).

(2) If you are not, do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of this subpart? If you do, your disability will be found to continue.

(3) If you do not, has there been medical improvement as defined in paragraph (b)(1) of this section? If there has been medical improvement as shown by a decrease in medical severity, see step (4). If there has been no decrease in medical severity, there has been no medical improvement. (See step (5).)

(4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b)(1) through (4) of this section; i.e., whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination. If medical improvement is not related to your ability to do work, see step (5). If medical improvement is related to your ability to do work, see step (6).

(5) If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (d) and (e) of this section apply. If none of them apply, your disability will be found to continue. If one of the first group of exceptions to medical improvement applies, see step (6). If an exception from the second group of exceptions to medical improvement applies, your disability will be found to have ended. The second group of exceptions to medical improvement may be considered at any point in this process.

(6) If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe (see § 404.1521). This determination will consider all your current impairments and the impact of the combination of those impairments on your ability to function. If the residual functional capacity assessment in step (4) above shows significant limitation of your ability to do basic work activities, see step (7). When the evidence shows that all your current impairments in combination do not significantly limit your physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature. If so, you will no longer be considered to be disabled.

(7) If your impairment(s) is severe, we will assess your current ability to do substantial gainful activity in accordance with § 404.1560. That is, we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you

5

have done in the past. If you can do such work, disability will be found to have ended.

(8) If you are not able to do work you have done in the past, we will consider whether you can do other work given the residual functional capacity assessment made under paragraph (f)(7) of this section and your age, education, and past work experience (see paragraph (f)(9) of this section for an exception to this rule). If you can, we will find that your disability has ended.  If you cannot, we will find that your disability continues.

20 C.F.R. § 404.1594(f).

In this evaluation process, the Commissioner has the "burden of producing evidence sufficient to rebut [the] presumption of continuing disability."  Bellamy, 755 F.2d at 1381. Indeed, the burden of production remains with the Commissioner throughout the sequential evaluation process.  Specifically, the Commissioner can find that disability has ceased:

only if such finding is supported by—(1) substantial evidence which demonstrates that—(A) there has been medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and (B) the individual is now able to engage in substantial gainful activity.

42 U.S.C. § 423(f); Murray, 722 F.2d at 500 ("[t]he Secretary ... has the burden to come forward with evidence of improvement"); see Carlson v. Shalala, 841 F. Supp. 1031, 1037 (D.Nev.1993) ("[i]f the Secretary finds medical improvement related to the claimant's ability to do work, the burden shifts to the Secretary to further show that the claimant is currently able to engage in substantial gainful activity before the Secretary can find that the claimant is no longer disabled"). However, a reviewing court will not set aside a decision to terminate benefits unless the determination is based on legal error or is not supported by substantial evidence in the record as a whole.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir.1984).

### V.  THE ALJ's DECISION

The ALJ made the following findings:

1. The most recent favorable medical decision finding that the claimant was disabled is the decision dated April 20, 2020. This is known as the "comparison point decision" or CPD.

6

2. At the time of the CPD, the claimant had the following medically determinable impairments: cervical degenerative disc disease and migraine headaches. These impairments were found to result in the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she was able to lift, carry, push, and pull up to 10 pounds both occasionally and frequently, sit for 3 hours in an 8-hour workday for 2 hours at a time, and stand and walk for up to 2 hours in an 8-hour workday for 1 hour at a time. She needed to alternate between sitting and standing at will. She could frequently climb stairs and balance. She could occasionally stoop and crawl. She could move her neck in flexion, extension, and rotation for a total of 1 hour in an 8-hour workday.  She could never reach overhead bilaterally. She could occasionally reach in all other directions with bilateral upper extremities. She could frequently handle and finger with bilateral upper extremities. She required unscheduled breaks of 15-20 minutes and would be absent about 3 days per month.

3. Through the date of this decision, the claimant has not engaged in substantial gainful activity (20 CFR 404.1594(f)(1)).

4. Medical evidence establishes that the claimant did not develop any additional impairments after the CPD through the date of this decision. Thus, the claimant has continued to have the same impairments that she had at the time of the CPD.

5. Since May 1, 2022, the claimant has not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

6. Medical improvement occurred on May 1, 2022 (20 CFR 404.1594(b)(1)).

7. After careful consideration of the entire record, the undersigned finds that, since May 1, 2022, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The claimant is limited to frequent bilateral over-the-head reaching. The claimant can frequently climb ramps and stairs, balance, kneel and crouch. The claimant can occasionally stoop, crawl, and climb ladders and scaffolds. The claimant can never work around unprotected heights. The claimant must avoid concentrated exposure [to] moving mechanical parts. The claimant can occasionally work around vibration. The claimant is limited to no more than moderately noisy environments. The claimant is limited to frequent fingering and feeling with the dominant right hand.

8. The claimant's medical improvement is related to the ability to work because it resulted in an increase in the claimant's residual functional capacity (20 CFR 404.1594(c)(3)(ii)).

9. Since May 1, 2022, the claimant has continued to have a severe impairment or combination of impairments (20 CFR 404.1594(f)(6)).

10. Since May 1, 2022, the claimant has been unable to perform past relevant work (20 CFR 404.1565).

11. On May 1, 2022, the claimant was a younger individual age 18-49. On March 14, 2024, the claimant changed age categories to an individual closely approaching advanced age (Ex. B25D; 20 CFR 404.1563).

12. The claimant has at least a high school education (20 CFR 404.1564).

13. Since May 1, 2022, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

14. Since May 1, 2022, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c) and 404.1566).

15. The claimant's disability ended on May 1, 2022, and the claimant has not become disabled again since that date (20 CFR 404.1594(f)(8)).

AR 19-29.  As noted, the ALJ concluded that plaintiff is no longer disabled under Title II of the Act.  AR 29.

## VI. ANALYSIS

Plaintiff alleges that the ALJ erred by (1) failing to properly assess plaintiff's subjective symptom testimony; (2) making a finding of medical improvement not supported by substantial evidence; and (3) failing to account for plaintiff's time off work.  ECF No. 8 at 10-25.  Plaintiff argues the failures were harmful, and that the court should either immediately award benefits or remand the case to the Commissioner for further proceedings.  Id. at 25.

A.  The ALJ Did Not Err in Rejecting Plaintiff's Subjective Testimony

Plaintiff alleges that the ALJ failed to properly consider her subjective testimony.  ECF No. 8 at 10-20.  Evaluating the credibility of a plaintiff's subjective testimony is a two-step process.  First, the ALJ must "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. . . . In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged;

8

she need only show that it could reasonably have caused some degree of the symptom." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted).  Objective medical evidence of the pain or fatigue itself is not required.  Id. (internal citations omitted).  Second, if the ALJ does not find evidence of malingering, the ALJ may only reject the claimant's testimony by offering "specific, clear and convincing reasons for doing so."  Id. (internal citations omitted). The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day."  Id. at 1016.

Here, the ALJ summarized plaintiff's testimony as alleging "continuing disability due to severe cervical arthritis with associated chronic neck pain and radicular pain, tingling, numbness and weakness in her upper extremities."  AR 22.  The ALJ noted plaintiff also testified to daily migraines with visual auras and associated symptoms, interrupted sleep, difficulty reaching, difficulty bending her neck, and inability to lift more than five to ten pounds.  AR 22-23.  Plaintiff alleged the pain worsened when doing certain tasks such as repetitive folding, vacuuming or mopping, that she has difficulty focusing, and is unable to stand and walk for long periods.  AR 23.  The ALJ concluded that plaintiff's "medically determinable impairments could have reasonably been expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the objective medical and other evidence for the reasons explained in this decision."  AR 23.

To reach this conclusion, the ALJ contrasted plaintiff's alleged symptoms with evidence from the record, in which she reported pain relief with treatment, particularly after the insertion of a permanent spinal cord stimulator.  AR 23.  The ALJ noted that plaintiff had been treated with physical therapy and medication and reported a 50% decrease in pain and muscle spasms.  AR 23-24.  The ALJ further found that physical exams showing 45 upper extremity strength in the right shoulder were inconsistent with plaintiff's statement that she cannot lift more than five to ten pounds.  AR 24.  The ALJ went on to detail the medical record's indications of physical

improvements that contrasted plaintiff's claims of ongoing disability symptoms. AR 25-26. The ALJ also found plaintiff's activities of daily living (doing laundry, cooking, washing dishes, maintaining her personal appearance, shopping, going to the mall and attending social dinners at the Veterans of Foreign Wars locations) were inconsistent with her symptom statements. AR 26.

The ALJ's reasons for discounting plaintiff's subjective testimony are legally sufficient. "An ALJ must identify the specific testimony that lacks credibility, provide clear and convincing reasons why the testimony is not credible, and identify the specific evidence in the record which supports the ALJ's determination." Talbot v. Colvin, No. SACV 14-1935 JC, 2015 WL 5826808, at *4 (C.D. Cal. Sept. 30, 2015). Here, the ALJ amply contrasted plaintiff's testimony with the medical record. AR 22-26. Plaintiff's motion offers an alternative view of the medical record by citing specific instances from plaintiff's medical history, which is vast. But where plaintiff only offers an alternative interpretation of the record, it is the ALJ's interpretation that is entitled to deference. See Terry v. Saul, 998 F.3d 1010, 1013 (9th Cir. 2021). Because the ALJ gave multiple reasons for discounting plaintiff's subjective complaints and because plaintiff points to nothing more than an alternate interpretation of the medical evidence, the court does not find error.

B. The ALJ's Findings are Supported by Substantial Evidence

Plaintiff contends that the RFC is not supported by substantial evidence because the ALJ (1) did not discuss the Comparison Point Decision in his analysis (ECF No. 8 at 20), and (2) did not properly weigh the medical evidence (id. at 22). Factual findings made by an ALJ are "conclusive if supported by substantial evidence." Biestek v. Berryhill, 587 U.S. 97 (2019) (quotation and citation omitted). Substantial evidence is "more than a mere scintilla" and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 1154 (quotations and citations omitted). "When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1196 (9th Cir. 2004). While the "substantial evidence" standard is a "highly deferential standard of review" (Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009)), the court cannot

10

affirm the ALJ's decision based on grounds on which the ALJ did not rely.  Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014).

In cases where the ALJ reviewed the propriety of continuing benefits, the district court must determine whether substantial evidence supported a finding that "there has been a medical improvement in the individual's impairment or combination of impairments" that relates to the individual's ability to work, and that "the individual is now able to engage in substantial gainful activity[.]"  42 U.S.C. § 423(f)(1).  To determine whether there has been medical improvement, the ALJ "must 'compare the current medical severity' of the claimant's impairment to the medical severity of the impairment 'at the time the most recent favorable medical decision that [the claimant] w[as] disabled or continued to be disabled.'"  Attmore v. Colvin, 827 F.3d 872, 873 (9th Cir. 2016) (quoting 20 C.F.R. § 404.1594(b)(7)).  "[T]he relevant baseline normally is the medical evidence underlying the ALJ's most recent disability determination."  Id.  "A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with your impairment[s]."  20 C.F.R. § 404.1594(b)(1).

Plaintiff contends that the ALJ erred by failing to compare the medical evidence available at the time of his decision to the CPD.  ECF No. 8 at 20.  This is not the case.  The ALJ did expressly compare the new medical evidence to the CPD.  AR 21 ("At the time of the CPD, imaging of the claimant's cervical spine revealed significant findings necessitating spinal surgery. . . . Current evidence indicates the claimant's cervical symptoms significantly improved following implantation of a spinal cord stimulator in February 2022. . .").  Though plaintiff asserts this comparison is conclusory or insufficient, the court disagrees.  Though the ALJ could have expanded on his analysis, it appears from the face of the decision that, per the substantial evidence standard, the ALJ adequately compared newer evidence to the CPD to determine that there had been medical improvement.

As to plaintiff's contention that the ALJ's decision is not substantially supported because of the ALJ's treatment of medical evidence, the argument is underdeveloped and unpersuasive. Plaintiff argues that "the findings of increased function are conclusory and based on only a

11

selective review of the medical records and reliance on non-examining physicians rather than treating physicians who provided documentation of the Plaintiff's continued impaired function." ECF No. 8 at 22.  However, plaintiff again cites only isolated incidents from the vast medical record.  Id. at 23-24.  She does not point to contrasting medical opinions that were discredited or argue that a specific medical opinion was overlooked.  Instead, she points to various medical treatment notes and asserts that those instances undermine the credited physician opinions.  This argument amounts to an alternate view of the evidence, which cannot overcome the court's deference to the ALJ's determination.  The court finds no error.

       C.  The "Time on the Rolls" Assessment is Inapplicable

Plaintiff asserts that even if the ALJ did properly assess medical improvement, he erred by failing to address "time on the rolls" as directed by DI 28015.310.  ECF No. 8 at 24-25.  DI 28015.310 provides that studies show that "the longer an individual is away from the workplace and is inactive, the more difficult it becomes to return to ongoing gainful employment."  It directs the ALJ to "[d]iscuss the impact of age and time on the rolls in the RFC assessment when the beneficiary is age 50 or over and received disability benefits for seven years or more."  Id.  Plaintiff argues that she is now 50 years old.  ECF No. 8 at 25.  However, at the time plaintiff's disability ended in May 2022, she was 47 years old; and, at the time of the ALJ's decision in June 2024, she was 49 years old. AR 14, 94, 193.  Accordingly, plaintiff has not established that DI 28015.300 is applicable to the facts of her case.  The court finds no error.

VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 8), is DENIED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 10), is GRANTED;

3. The Clerk of the Court shall enter judgment for the Commissioner and close this case.

DATED: February 2, 2026

_allison clare_
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE